Go ahead. Thank you. Good morning. May it please the Court, Alan Kotler for plaintiff appellants, Jim and Janet Baker. With the Court's permission, I'd like to reserve three minutes. You may have it. Thank you. 93A was created a little over 40 years ago. There have been hundreds of opinions written on 93A. Chief Judge Lynch and Judge Toriello, Your Honors, have written many opinions and have been on many paddles on 93A. Judge Ripple, I think, came on a 93A case recently with Judge Toriello involving a mortgage. The facts found by the district court in this case are more violative of 93A than virtually every case, maybe every case, that have been decided by the state courts, the SJC, the federal courts, and the circuit. The chief judge of the district court rejected every single defense that Goldman Sachs asserted in the trial below. The chief judge rejected Goldman's investment banking expert as being not credible, and the district court rejected every argument of Goldman Sachs' expert. The chief judge adopted virtually every single thing that the Baker's investment banking expert opined on this case, and effectively, the district court said that our expert knew the most about investment banking. The one thing that Judge Sowers did not do, she said she didn't give credit to what our expert said about how Goldman's conduct was shocking and grossly subpar. Judge Sowers never explained why she didn't adopt that one sentence. The district court made factual determinations that Goldman Sachs did not do the work it was hired to do and admitted they had to do. The district court found that Goldman Sachs was significantly dissatisfied with the due diligence responses of Learnout and Houseby. The district court found that Goldman Sachs did not tell Dragon or the Bakers in a $600 million transaction that it was dissatisfied with all of L&H's responses to the due diligence questions, many of which were significant that went to the heart of the fraud, as Judge Sowers found, that is those Asian revenues. The district court found that had Goldman Sachs told the Bakers and Dragon the truth that it was dissatisfied with all of the due diligence, the district court found that it's likely that this debacle would never have happened. Jim and Janet Baker would not have lost their company. There are many other things that the judge found, Your Honor, but I can see Your Honor wants to ask a question. Let me tell you what my problem is and then maybe you can answer it. It seemed to me, especially with the analysis of the Asian figures, that there seemed to be a certain amount of confusion among the investment bankers and the accountant and to some degree perhaps the principals here in the case about who was supposed to do what. I'm not saying that that excuses the investment bankers, may make them negligent, but doesn't that mitigate somewhat the degree of moral opprobrium that we ought to ascribe to their activities? No, Your Honor, because the fact findings, the findings by the district court, were that Goldman Sachs agreed to do the due diligence on Asian revenues. It's the investment banker's job to scrub the projections of the Asian revenues and Chief Judge Sowers found that to be a fact. She adopted what Donna Histerich, the investment banking expert, said about that. Goldman Sachs admitted, Rich Wainer, if you read his testimony, he admitted that was his job. So there was no confusion about that at all, Your Honor, and the record is absolutely 100% clear. It was Goldman Sachs' job. That's what investment bankers do. They scrub the future projections and everybody knew that the Asian revenues were an issue and Ellen Chamberlain wrote her February 17th memo to Goldman Sachs. I expect you to do that work. There was no confusion on that, Your Honor. I'm afraid I read the record in the same way, and Goldman Sachs actually says to the company, although not to Janet Baker, there needs to be more work done. We tell you you need to get your accountants and Wilmer Hale, Hale and Dorr then, your counsel involved in this investigation, and there is some testimony that Chamberlain was the ultimate point person on the due diligence questions. It seems to me if Goldman Sachs was passing the buck, then the company owed it a direct and clear response that no, no, that's your job to do. So, in fact, warning was given to the company. Whether it should have been disclosed further is debatable, but your case seems to be about the failure of Goldman Sachs to repeat those warnings after the initial warning, even though they had some question, they felt their questions hadn't been resolved. This then goes to Judge Ripple's point about the morality of what happens. And after all, are you the one who framed the case in terms of negligence? Because the statute goes to unfair or deceptive practices, but somehow in this case the notion of negligence came into it. Who framed the case in those terms? We did not frame it in those terms, Your Honor. The only issue is, was the conduct unfair or deceptive? Which, as Your Honors know, Your Honor, Judge Lynch, Judge Toriella, every case is decided sui generis on the particular facts of that case, and it's not delimited to a court. If you look at what the SJC has said, this is a very widespread, broadly interpreted tort that goes to fairness. Okay, your brief opens with a sort of, the district court was wrong to use the term egregious. Okay, now this court started using the term, but the SJC then picked it up and it's now part of the law, unless you think the SJC is going to retrench on this. Your Honor, let me speak about the word egregious. Yeah. And I want to get to the core here. If you read the 93A hearing transcript, what you will see is that Chief Judge Saris never once thinks in terms of unfairness or deception. She was constantly thinking about the concept of egregiousness as a specially very high standard, and at the end, Judge Lynch, if you look at the end of the hearing, Judge Saris says, plaintiffs, you have a very high burden. You have a very high legal standard to meet. Chief Judge Saris wasn't thinking in terms of unfairness, of deception. She wasn't thinking as broadly as the SJC takes the statute. If you look at the Dracopoulos case, which we cite, the 2013 SJC case, they quote what it takes to violate 93A. It's very broad, Your Honor, and if I could just finish, Your Honor, I believe that Judge Saris used a much higher legal standard than the SJC would use or that the Massachusetts State Legislature had intended. I submit to you the Massachusetts State Legislature would look at Judge Saris' findings, that what Goldman Sachs did, and say they violated 93A. I believe the SJC would do the same thing, and I disagree with your inference, Judge Ripple. There was no question that Goldman always had to do that work. In fact, Judge Saris found... That's why difficulty is not my position. Thank you, Your Honor. What Judge Saris found was that February 29th CYA memo, which Rich Wainer said he got the supervisors involved in, and all the supervisors of Goldman said we know nothing about it. That CYA memo never warned we didn't do the work. We didn't get the licensing agreements. We didn't try to get permission to contact customers. We didn't scrub the revenue projections of Asia. We have no idea how Learn Out and How Speak did their revenue projections. That memo did not say we did not do the work. Had they done that, this deal would never have happened. And as Judge Saris found, Judge Lynch, she wrote in her opinion that CYA memo was not a get-out-of-jail-free card. It didn't release Goldman from doing the work they were supposed to do. They didn't do it, and I am... Can I go back to the legal standards? Your case, despite your briefing, seems not to be contesting the rules of law that the district court articulated. It seems, in the end, nearly to be saying there is an incongruity between the factual findings and the conclusion. All right. So how are we supposed to look at that? Your Honor, it's a great question. It's a great question. And that's why I started off by saying, I believe that this court needs to look at all of the other 93A decisions, and I think you will agree with me. And I have a list, because, Your Honor, I've read all your opinions. And, Judge Toriaya, I read all your opinions. Good. And I made a list for you, and I'm going to just tell you in the record, because some of these cases are not in our brief, and I asked you, look at the cases that you worked on and you wrote opinions on. Judge Toriaya, the in case. You have two minutes reserved. 2007, 488-5336. Counsel. Counsel. Counsel, no. Okay. You can submit a 28J letter to the court, to which your opponent will have 10 days to respond if you want to call additional citations to our attention. I appreciate that, Your Honor. And I think it would make it easy, because if you look at those cases, you'll see there's no comparison. Thank you, Your Honor. Thank you. And please declare John Donovan for Goldman Sachs. Have you read all of our cases? I have, Your Honor. Once the panel was appointed, we figured out exactly which additional cases we had to read. But let me go to the question you just asked, about how are you to resolve this when he says there's an incongruity between what the judge found and what he says the result should have been. And the answer is this is an appeal from a factual finding that there was not unfair or deceptive conduct by Goldman Sachs in this transaction. That imposes a clear error standard. You must then scrub the record to see if you can find that there was only one conclusion, the conclusion that Mr. Cotter argues for. That could be found in this evidence. That, I suggest, is something that you cannot do, because there was ample evidence upon which this judge could have concluded the conduct was not unfair or deceptive, as you found. One way to think about this is to look at what the jury did, because the jury, after 23 days of trial, found that Goldman Sachs was not negligent, was not professionally negligent, did not make a negligent misrepresentation, was not intentionally misrepresented. Is there evidence on the record that Goldman had doubts about this transaction, even at the very last moment? Absolutely, Your Honor. And it was articulated. In fact, Judge Lynch pointed to it, this February 29th memo. This February 29th memo specifically instructs the company, look, we are nervous about what's happening in Asia. The issue is an accounting issue. We are not accountants. We suggest that you get accountants, Arthur Renison, to look at it. In fact, on page two of that memo, it specifically refers to the technology and solutions area and suggests that that portion of the business be deconstructed, because that's where the Asian revenue was. So they were pointing out, you know, till they were blue in the face, that this was the problem that needed to be resolved. The evidence was that they were not the quarterbacks of the diligence. Ellen Chamberlain, the CFO, was. That didn't come just from Ellen Chamberlain's mouth. It came from Sarah Rothenberg at Hale and Dorr, the law firm formerly known as Hale and Dorr. It came from Janet Baker herself. Janet Baker herself said Goldman's job was not to do the diligence. That's something the plaintiffs keep on overlooking, which is what Mr. Baker and Ms. Baker both said. That came from the president of the company, John Shigori. That came from the chairman of the board, the CEO, excuse me, Representative Seagate, all of which was that it was not Goldman's job to do this. But then it said in that memo, if you think it is, we really need to get someone else to do it. Now, 93A, as, Judge Ripple, you pointed out, the concept is that there be some unfairness that the language this court has used, that Your Honor has used, that Your Honor Judge Lynch has used, is that it fit within the penumbra of some common law or statutory violation and embrace, in addition, moral opprobrium, a concept of immorality, unscrupulousness, and unfairness. Judge Torreya, the case you wrote last year, talked about an extortionate quality that has the rancid flavor of unfairness. What was the service your company was supposed to provide? Financial advice. I would give you the testimony of Janet Baker. They were to help negotiate and structure a transaction. That was what Janet Baker herself said Goldman's job was. And if you were bent on deception, if you're truly trying to do something unscrupulous, why would you put it in the face of the client and say, do this, we're not doing it, you really should? That's what the evidence was, and that's why the jury could so easily conclude no violation. To say that Judge Saris was wrong when the jury found that is hard to believe. Let me suggest to you the difficulty, again, I have with that characterization of what I suppose. It seemed to me that while you could excuse any of these particular problems that arose along the way, it's simple negligence. When you looked at the whole, Goldman Sachs is the defendant here, and when you looked at the whole treatment that was given the client, it looked to me like these people came to Goldman Sachs and said they needed financial advice, and Goldman Sachs gave them a real JV, if not freshman team, of people who didn't know which end was up, and they allowed these people to give the financial advice, and as a result these people lost their hard-earned money. From Goldman Sachs' point of view, to tell the people that you're going to provide a service, we're going to provide you a service, then to give them this level of service has a moral, I think most people would say there ought to be a certain moral opprobrium to the company acting that way. That's what bothers me about the case. And I think that just looks at the evidence the way the plaintiffs do and ignores all of the contrary evidence that was in fact done. This was not a JV team. Mr. Wainer did more transactions in his career at Goldman Sachs than the plaintiff expert has done altogether. They were involved in the transaction for a period of, frankly, less than it took to even try the case from December until January. It was a very short engagement. Their job was to structure a transaction. They gave the company the diligence list that they should in fact do. They gave evaluation books to the company that examined everything that Mr. Sidney should. It looked at sensitivity analysis of projections. It looked at all kinds of things, and it structured the transaction. But then the company rejected Goldman's advice. Goldman said, go off and do this additional diligence. The company said no. Judge Saris, in fact, found that. She found they were increasingly at loggerheads. And then Mrs. Baker went and played investment banker on her own. This was a transaction that was intended to be a 50-50 stock cash deal. Because of the distress the company was in, Barnabas Husby came back and said, you know what, we're cutting the price. And Janet Baker, without anyone's advice, went off and signed a napkin agreement to do the entire deal at the original price but all in stock. If you're going to play investment banker by yourself, you can't fault the investment banker for not doing its job, even if it was a JV team. During this time, you people were considering investing yourselves, weren't you? No. Is there something in the record that you decided not to invest? No. A different area of Goldman Sachs, in a private equity investment area, three years before this transaction, looked at a possible equity investment knowledge and decided not to do it. That's all the evidence is. And the testimony from the banker is, we look at 500 deals a year, we do two. Presumption is no. There was no compelling reason to get into this, and that's all we know about it. But it was not anything like we didn't tell the Bakers or tell Dragon or tell anyone else something that should not have happened, or had any knowledge that the reason not to invest in L&H years before was because there was something amiss about L&H. Don't forget what this transaction was about. This was, excuse me, what the problem was. The problem was Asian revenues that Lerner and Housley did not have because they were crookedly concealing it. The issue, Judge Ripple, is not whether Goldman Sachs did a perfect job. The claim is that they should have detected fraud, and that would have stopped the losses that the plaintiffs now claim they would have suffered. Well, it was precisely the quality job that Goldman did that directed them to that very issue, and the client said no. That hardly suggests a program. As I say, if you are bent on deception, and 93A is about deception in particular, why would you put that in the client's face? One thing that I've been puzzling over is that the jury found that Mrs. Baker had, in fact, violated duties she had to other people,  No, Your Honor. We had made, in the other case, there were two sets of plaintiffs tried simultaneously. We'll be talking about Mr. Roth and Bamberg shortly. Roth and Bamberg claimed that Goldman, well, they claimed by the time we got to trial that Goldman owed them a duty directly. I think that was wrong as a legal matter. Judge Sarris allowed them to pursue it. We then made a third-party claim, a contribution claim, that if we are liable to anyone, including Mr. Roth and Mr. Bamberg, it's in part because of what Mrs. Baker or Mr. Baker said or did or did not say or do to them. In fact, Mr. Roth and Bamberg identified them as their agents. They identified nothing that Goldman Sachs had as a relationship with them. And the jury answered those questions superfluously because having found that Goldman was not liable, there was no third-party claim. But it's interesting, though, because it corroborates, doesn't it, the jury's understanding of this evidence and what Goldman's role was and what the Baker's role was. The jury evidently understood that the Bakers understood all this stuff. I mean, Janet Baker's testimony itself, we talk about Asian revenue. I asked her. She was asked in deposition multiple times she was asked and testified. We knew all about Asian revenue. That was an extraordinary issue for us. We asked questions that Goldman had us ask, and we got answers that satisfied us. Now, having testified that they did what they were supposed to do, which turns out now they say to have been false, the jury could easily conclude, well, Goldman did his job. It was the Bakers who were in a rush to do a deal that ignored that advice. You know, again, the irony, Your Honor, is it corroborates that the work that Goldman did was not subpar or JV. It corroborates that they did the work well and were ignored. The jury found that, and Judge Saris ultimately found that. The key, and again, going back to the question you asked at the very outset, Mr. Kotler, how do we distinguish between this conduct, it's that the factual finding of unfairness and deception, no unfairness and deception is binding unless you can say there was clear error in reaching that conclusion. The plaintiffs do not attempt in all of their briefing to say that there was clear error. They say only that as a matter of law this conclusion must be a violation of 93A. That's not the way this Court has articulated distinction. What about the belated argument that the Attorney General's regulations apply in this situation? Your Honor, that's an argument made in the other case. In the other case, all right. The way I'd point to you to think about it is on the legal question, plaintiffs won. The question of legal issues of 93A and factual issues is, could this qualify as a 93A violation? Legal question. They won that. The judge says, I will consider it as a 93A violation. But then there's the factual question, was it in fact unfair and deceptive? In light of what the Bakers knew, what they were told, what they did, what they were advised, what they refused, the finding that Goldman was hardly bent on extortionate behavior, in Your Honor's words, or unfairness or deception or opprobrium or unscrupulousness or certainly anything for its own benefit is hard to imagine. And there certainly was evidence to uncover it. Indeed, at page 52 of the plaintiff's brief, it says the question is whether the conduct was unfair or deceptive. Judge Saris found it was not. That's dispositive. I'd put it to you this way. It is permissible, but it would be quite odd for a district court on the same evidence to conclude differently from a jury. When a jury found no negligence, no intentional misrepresentation, no negligent misrepresentation, no breach of fiduciary duty, and the judge is imposing a higher standard. It would be odder still for this court to reach down and reverse that finding on a clear error standard. And frankly, it would be extraordinary to reach down on the basis of what the plaintiffs say the judge really meant and should have concluded. On that basis, unless Your Honor has more questions, I have nothing further to add. Thank you. Everything Mr. Donovan just told you factually was rejected by Judge Saris. Everything he said about Janet Baker, rejected by Judge Saris. Goldman Sachs never argues that Judge Saris committed clear error in all her fact findings because Judge Lynch's case is about what you just said. Judge Saris found everything against Goldman Sachs, but she didn't pull the trigger on unfair and deceptive. Unfair and deceptive is a legal conclusion. It's not clear error. The clear error here was in the fact findings, and Goldman Sachs never contests and says that those fact findings by Judge Saris were clear error. Everything Mr. Donovan just told you were things that he put in his brief to Judge Saris, and she rejected. So you're going to argue De Novo review, that doesn't seem to fit either. I'm sorry, Your Honor. De Novo review doesn't seem to fit either. Well, I think it does, Your Honor. If you look at the Casavant case of the SJC until... We have to find that given her factual findings, she had no choice. It was irrational of Judge Saris to reach the result she reached. I believe, Your Honor, number one, that if you look at the two, there are two cases subsequent to the Casavant case, which I can also send, Your Honor, where they don't talk about legal conclusions. They don't talk about unfair and deceptive being a fact finding. It's a legal conclusion. But even if the standard were clear error, even if that were the standard, I submit to you that the district court under these facts committed clear error. And if your honors look at the other cases that you've worked on in 93A and compare those fact findings to the fact findings here, you would find that with Goldman Sachs here, this JV team acted unfairly and deceptively. And I know it takes some bravery to tell a jury that they got it wrong. But this jury got it wrong, and this court, the circuit court and the SJC, has not been reluctant to find that trial judges erred. They didn't find something to be unfair and deceptive. The Anthony Peer case, which is an SJC case, Judge Selya did it in an equitable insurance case. I can give you these citations, but there's no question that the fact findings here don't fit the legal conclusion.  Thank you.